UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 05-20863-CIV-MOORE

SECURITIES EXCHANGE COMMISSION,

    Plaintiff,

vs.

PENSION FUND OF AMERICA, L.C., et al.

    Defendants.

_____/

## ORDER GRANTING RECEIVER'S MOTION FOR ANTI-SUIT INJUNCTION AND DENYING MOTION FOR ORDER TO SHOW CAUSE WHY JOSÉ PABLO URBINA SOLERA SHOULD NOT BE HELD IN CONTEMPT

THIS CAUSE came before the Court upon the Motion of Thomas G. Schultz, in his capacity as court-appointed receiver ("Receiver") for Pension Fund of America, L.C.; PFA Assurance Group, Ltd.; PFA International Ltd.; Claren TPA LLC; Shadow Creek Investments, LLC; and Atlantic Realty Ventures, LLC (collectively, the "Receivership Entities"), for (1) an injunction prohibiting José Pablo Urbina Solera ("Urbina") from proceeding with foreign litigation aimed at interfering with this case, and (2) for an order to show cause why Urbina should not be held in contempt of Court (dkt # 772).

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.  **BACKGROUND**

This matter is a receivership action initiated by the U.S. Securities Exchange Commission (dkt # 1). The Court assumes the reader's familiarity with the underlying facts of the case,[1] but offers the following background. The Receiver is responsible for administering a fund from which millions of dollars are to be returned to investors defrauded in a massive investment fraud scheme perpetrated by Pension Fund of America, L.C. and related companies that eventually became the Receivership Entities. The Receiver has already requested, and this Court has approved, two rounds of disbursements from the fund (dkt #'s 669, 782).

Urbina, a Costa Rican citizen residing in Costa Rica, filed a claim in the Receivership (see dkt # 671-1) on November 8, 2007, seeking return of $8,030,000.00 that he allegedly invested in PFA, in the form of three checks totaling $7,900,000.00, and two more checks totaling $130,000.00. The Receiver filed a Motion (dkt # 671) for summary disposition of Urbina's claim, recommending that the claim be denied for lack of evidence that Urbina had ever invested in PFA, and because the checks which Urbina allegedly gave to PFA were drawn on an account that belonged to an individual named Harlon Parchment, that, during the relevant time period, never had sufficient funds to cover the amounts Urbina allegedly invested. Urbina filed a Response to the Receiver's Motion (dkt # 676). The Court granted the Receiver's Motion (dkt # 688), denying Urbina's claims in their entirety. Urbina then submitted a letter to the Receiver (dkt # 772), which the Court construed as a Motion for Reconsideration and denied (dkt # 779).

On March 17, 2009, the Receiver filed the instant Amended Motion for Injunction and for Order to Show Cause (dkt # 772), seeking to enjoin civil litigation that Urbina commenced in

---

[1] For discussion of prior proceedings in this matter, see the following: Order Granting Motion for Preliminary Approval of Settlement (dkt # 587); Order Granting Motion for Final Approval of Settlement (dkt # 622); Amended Order Granting Motion of Receiver and Lead Plaintiffs for Preliminary Approval of Settlement (dkt # 687); and Final Judgment and Order of Dismissal with Prejudice (dkt # 750).

Costa Rica, allegedly to interfere with this Court's resolution of his claims. Urbina has filed two legal proceedings in the Criminal Court, III Judicial Circuit of San José, Costa Rica, numbered 06-002-647-PE ("the 2006 case") and 09-092-283-PE ("the 2009 case"). To better understand the nature of Urbina's lawsuits, and their impact on this case, a brief discussion of Costa Rican law is in order. As explained in the affidavit of Hugo Chavarria (dkt # 772-4), whose law firm the Receiver has retained as local Costa Rican counsel, a legal proceeding filed in a Costa Rican court has two components that may proceed independently of one another: a criminal component, which is handled by a government prosecutor, and a civil component, which, although pending in criminal court, is a private proceeding brought by a private party, and called a "civil action." A civil action is handled by the party who filed it, called a "civil actor." Urbina is the civil actor in both the 2006 and the 2009 cases.

Urbina's 2006 case alleges charges under the Costa Rican Criminal Code for fraud, wrongful retention, and "ideological forgery" against, among others, Carlos Manuel Ruiz García, a local Costa Rican Representative for PFA. The 2006 case seeks $7,900,000.00 in funds that Urbina allegedly provided to García, through three checks, for investment in PFA. The 2009 case names the Receiver as the Defendant, and claims that the Receiver is liable for two checks totaling $130,000.00 that Urbina allegedly provided to García for investment in PFA, but which were then supposedly lost. Urbina accuses the receiver of the felony of wrongfully retaining these funds. The Costa Rican prosecutor has recommended that the 2006 and 2009 cases be consolidated due to their similarity, and has also recommended that the criminal component of each case be dismissed. Hearings are pending in the Costa Rican court on the prosecutor's requests to consolidate the cases and to dismiss their criminal components; Urbina will have the right to appeal any dismissal.

The Receiver does not seek to enjoin the criminal components of either case. The Receiver does ask the Court for an injunction against the civil components of Urbina's Costa Rican litigation, and any other litigation by Urbina against the Receiver or the Receivership Entities. The Receiver argues that Urbina's Costa Rican civil litigation violates several of this Court's Orders, including the Order Appointing Receiver (dkt # 57); the claims procedure mandated under the Claims Order (dkt # 639) and the Orders on receivership distributions (dkt #'s 621, 622, 623); as well as the Order denying Urbina's claim (dkt # 688). The Receiver also notes that in submitting a claim to the Receiver, Urbina signed a claim form agreeing to submit to the exclusive jurisdiction of the U.S. District Court for the Southern District of Florida (dkt # 772-3). The Receiver also requests an Order to show cause why Urbina should not be held in contempt for filing the Costa Rican litigation and allegedly sending threatening correspondence to the Receiver.

## II. ANALYSIS

"It is well-established among the courts of appeals that federal courts have some power to enjoin foreign suits by persons subject to federal court jurisdiction." Canon Latin America, Inc. v. Lantech (CR), S.A., 508 F.3d 597, 601 (11th Cir. 2007) (citing cases). However, international injunctions should only be issued "sparingly" and with "care and great restraint." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004). The Court of Appeals for the Eleventh Circuit has stated unambiguously the standard for whether district courts in this Circuit may enjoin foreign litigation: as a threshold matter, the district court must determine (1) whether the parties are the same in both the foreign and domestic lawsuits, and (2) whether resolution of the case before the enjoining court is dispositive of the action to be enjoined. Canon, 508 F.3d at 601. The "dispositive" prong is understood in

this Circuit to mean that resolution of the case in the enjoining court must "settle or finish the dispute." Id. at 601, n.8.

Only if the initial threshold is met should the district court proceed to consider additional factors to determine whether an injunction should issue. Id. at 601. Such factors may include protection of the enjoining court's jurisdiction, safeguarding important national policies, and considerations of international comity—the latter of which is to be given substantial weight. See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 18 (1st Cir. 2004). This inquiry is necessarily fact-intensive, and requires a district court to consider the totality of the circumstances. See id. at 18-19.

The first threshold factor is satisfied here, as the parties are the same. The Receiver is a party to this action, and controls the assets of the Receivership Entities (see Amended Order Appointing Receiver, dkt # 57). Urbina is a claimant in this action, by virtue of the claim he submitted on November 8, 2007 (see dkt # 671-1). In the 2009 case, Urbina is suing the Receiver directly, and thus there can be no question as to the identity of the parties. In the 2006 Case, while the Receiver is not a named defendant, Urbina has sued Carlos Manuel Ruiz García as representative for PFA, one of the Receivership Entities. The Receivership Entities are therefore potentially liable for any damages ultimately awarded in the 2006 Case. García would not have been named but for his actions as an employee/agent of PFA, which form the same basis of Urbina's Costa Rican litigation as the claim he submitted to the Receiver. As the Receiver is tasked with managing the assets of the Receivership Entities (dkt # 57), the Receiver's interests are aligned with García's, and are implicated to such an extent that the first threshold requirement is also met in the 2006 Case. See Paramedics, 369 F.3d at 652 (holding that the same parties requirement was met where the claims against a party not named in

domestic litigation "rest chiefly (if not completely) on its affiliation with [the party named as defendant in foreign litigation]."); Int'l Equity Investments, Inc. vs. Opportunity Equity Partners, Inc., 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006) (concluding same parties requirement was met where plaintiff and non-party had the same interest in stopping defendants from avoiding fiduciary obligations by means of foreign litigation, and stating that "[w]here parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met"), aff'd, 246 F. App'x 73 (2d Cir. 2007).

The second threshold factor—that the domestic action be dispositive of the foreign action—is also met, because resolution of Urbina's claims in this Court necessarily "settles or finishes" the dispute over his asserted rights to Receivership funds. Since at least this Court's Order appointing the Receiver and limiting lawsuits to protect the Receivership property (dkt # 57), and certainly since this Court's Order establishing the claims procedure process (dkt # 639), proceedings in this Court have been the sole means for resolving putative creditors' claims to Receivership assets.[2] Urbina accepted this procedure as his sole avenue for recovery when he signed a claim form submitting to

> [t]he exclusive jurisdiction of the United States District Court for the Southern District of Florida . . . for the following purposes: determinations of objections, defenses, claims or counterclaims that could be asserted by the Receiver against such claimant or the holder of such claim arising out of any and all dealings or business transacted by or with the Pension Fund of America.

(see dkt # 772-3). Pursuant to the court-ordered claims procedure, Urbina submitted a claim for the same amount of funds he seeks in the Costa Rican actions, arising out of identical facts. This Court denied Urbina's claim (dkt # 688), and then denied what the Court construed, quite generously, as his Motion for Reconsideration, in an Order that also prohibited him from making

---

[2] The claims procedure Order also reserved certain funds for the resolution of disputed claims, such as Urbina's.

further claims for payment from the Receiver (dkt # 720). Urbina's claims for what he argued was his share of the Receivership assets have therefore been adjudicated and extinguished in the only venue available for them to be heard, and the Orders resolving those claims are necessarily dispositive of the factually identical claims that he is pursuing in Costa Rica. This case thus presents facts exactly the opposite of those in Canon, where the Court of Appeals vacated an international anti-suit injunction of superficially similar foreign litigation, finding that the foreign action was intended to vindicate statutory rights uniquely available and enforceable in the foreign forum. See 508 F.3d at 602. Here, in contrast, the rights to be enforced were available uniquely in the domestic forum—this Court. This Court's Orders "settle or finish" Urbina's dispute, and accordingly, the second threshold prong is satisfied.

In light of the totality of the circumstances, and taking into account important considerations of international comity, the equities here weigh strongly in favor of an injunction. While international anti-suit injunctions are less appropriate in cases of parallel litigation—that is, substantively similar claims proceeding simultaneously in different fora—Urbina's Costa Rican litigation is an example of interdictory litigation designed to interfere with the proceedings in this Court and to evade this Court's judgments. See Mut. Serv. Cas. Ins. Co. v. Frit Indus., Inc., 805 F.Supp. 919, 924 (M.D. Ala. 1992) (approving international anti-suit injunction and concluding that interdictory litigation consists of "an attempt to carve out exclusive jurisdiction over the action in [the foreign forum] and to terminate the action before this court."), aff'd 3 F.3d 442 (11th Cir. 1993). Furthermore, an injunction is necessary in this case in order to defend this Court's jurisdiction and to protect the integrity of the judgments denying Urbina's claims. As the Court of Appeals for the District of Columbia Circuit explained in the seminal case on international anti-suit injunctions, when "the injunction is requested after a previous judgment on

the merits . . . a court may freely protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation." Laker Airways Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 928 (D.C. Cir. 1984) (affirming injunction). See also Quaak, 361 F.3d at 20 (need for anti-suit injunction "crests" when party employs foreign litigation "in a blatant attempt to evade the rightful authority of the forum court"). As the Receiver correctly notes, the procedure mandated by this Court for providing restitution to defrauded investors would be completely up-ended if every claimant were free to re-litigate his claims abroad, and to seek foreign judgments effectively overturning this Court's Orders. At least one federal district court overseeing a receivership has found, on similar facts, that such a situation would be intolerable, and that an injunction of foreign litigation is necessary to prevent the depletion of receivership assets. See Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt., Ltd., No. 07-C-3598, 2007 WL 2915647, at *21-22 (N.D. Ill. Oct. 4, 2007) (approving international injunction where foreign litigation would "frustrate this court's ability to provide meaningful relief . . . The English action is clearly an attempt to make an end-run around this court and the NFA's orders preserving the assets of the [receivership] for the benefit of the investors").

While international comity concerns must be weighed, those concerns do not tip the scales against an injunction here. Comity concerns are attenuated in this case for several reasons. First, the Receiver does not seek to enjoin the criminal components of the Costa Rican litigation, and therefore there is no danger that an injunction would interfere with the work of the Costa Rican prosecutor. Second, this case presents no conflicting national priorities or regulatory schemes, such as the conflicting American and British antitrust policies at issue in Laker, 731 F.2d at 214. Third, no final judgments have been entered in the Costa Rican actions that this Court's injunction might disrupt. Even if orders or judgments had been entered in the

Costa Rican litigation, or are entered in the future, "orders of foreign courts are not entitled to comity if the litigants who procured them have deliberately courted legal impediments to the enforcement of a federal court's orders." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 60 (2d Cir. 2004) (citations omitted). Urbina's actions are consistent with that description.

Although the Court does not do so lightly, given the foregoing, it is necessary to enjoin Urbina's foreign litigation to protect the functioning of the Receivership and to safeguard this Court's jurisdiction and Orders. With respect to the Receiver's Motion seeking to hold Urbina in contempt, the Court will permit Urbina the opportunity to comply with this Order before instituting contempt proceedings. The Receiver may renew its Motion for contempt upon a showing that Urbina has not complied with the injunction, to be filed no later than twenty (20) days from the date of the alleged non-compliance.

## III.   CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Receiver's Motion for an anti-suit injunction is GRANTED. An anti-suit injunction is entered against José Pablo Urbina Solera that enjoins Urbina, his agents, and any entities affiliated with him who receive actual notice of this Order through personal service or otherwise, from commencing, or continuing with, civil litigation in Costa Rica or elsewhere against the Receivership Entities (such as Pension Fund of America), the Receiver, and/or the Receiver's agents, employees, attorneys, and other professionals, that would interfere with the progression of this case before this Court. It is further

ORDERED AND ADJUDGED that Urbina shall take all steps necessary to withdraw all pleadings in the civil actions in Costa Rica or elsewhere against the Receivership Entities, the

Receiver, and/or the Receiver's agents, employees, attorneys, and other professionals. It is further

ORDERED AND ADJUDGED that any and all criminal claims filed by Urbina in Costa Rica are not the subject of, or otherwise affected by, this injunction. It is further

ORDERED AND ADJUDGED that the Receiver's Motion for an Order to show cause why Urbina should not be held in contempt is DENIED WITHOUT PREJUDICE.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of April, 2009.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record